Rick Johnson, we understand you were appointed under the Criminal Justice Act to handle this appeal, and the court appreciates your willingness to accept the appointment. You may proceed. Thank you, Judge, it's my pleasure to be here. I'm Rick Johnson, I'm representing Antonio Robertson. I wanted to talk this morning in the ten minutes primarily about the second issue that we presented on appeal, which was the application of the obstruction of justice enhancement at sentencing. At trial, evidence was presented that Mr. Robertson had been engaging in a series of PCP transactions with the primary defendant, Walter Sorrells, during the mid-summer of 2011, maybe a period of time of about one month. The government accused him, and he was convicted of the conspiracy to distribute PCP, but additionally conspiracy to launder money. Additionally, Mr. Robertson was convicted under Section 1956, so under Section 2S1.1, a two-point enhancement was applied on the money laundering conviction. Two levels, I think it would be. It was two levels, yes, I'm sorry. So with the two-level enhancement, under the grouping rules, the money laundering charge was the one under which the court would determine the sentence. At sentencing, the court applied an obstruction of justice enhancement for a high-speed car chase that Mr. Robertson was involved in following the last transaction on August 9, 2011. And the question before this court is whether or not that was a proper enhancement under Chapter 3, given that the count under which the court was determining the sentence was the money laundering charge. And the question is whether or not there was the act of fleeing from the police. While it obstructed justice, certainly on the conspiracy to distribute PCP, there was evidence that he was in possession of it at the time. The question is whether or not it was also obstruction of justice of the crime of money laundering. And our argument is that there was no crime of money laundering or conspiracy that would have caused the obstruction of justice enhancement to apply. Did the same evidence support both counts at trial? The same evidence was the evidence that was used to support it at trial. And I mean both counts? Both counts, that's correct. And Mr. Robertson filed a pro se brief and one of his arguments in the brief was that there was not sufficient evidence to support the money laundering conviction. And they're closely related. I'm trying to stay on your point. Of course, and they're related. Go ahead. The entirety of the case was the PCP. There was no evidence of what he did with money after he sold PCP. There was no direct evidence that he took the proceeds from selling PCP and reinvested them in more PCP. That was circumstantial. What was the circumstantial? Was there evidence that he was fronted it? I'm trying to recall from the record. Or was it just the evidence that others were fronted? I think the evidence was that others fronted it. Sorrell's definitely dealt with narcotics on consignment. I don't recall there being direct evidence or any evidence that Mr. Robertson received PCP on the front. And so are you taking the position that there was sufficient circumstantial evidence to show that he was reinvesting his profits? No. We are not taking that position. While I did not present it in my brief, Mr. Robertson presented it in his. And if I had filed as part of my brief, it would not have been in Anders' brief. The circumstantial evidence is just simply that because, and I don't believe it's sufficient, but the circumstantial evidence is that a person engaged in narcotics trafficking must inherently reinvest the proceeds if they go back to get seconds from their dealer. That's it. I think that the Was there testimony as to the seconds or money or something? No. No, there was no testimony. There was no testimony about the money at all. It was the government made the argument that there is a permissible inference from the fact that he went back to buy PCP a second time and therefore must have and must be reinvesting the proceeds of his previous narcotics sales. And I don't think that that's a permissible inference either in the application of the obstruction of justice enhancement. What's this have to do with the sentencing adjustment? Because we're getting to the, Judge Benton asked about the facts supporting the obstruction and they are related. You're now saying there's not a sufficient evidence to support the money laundering conviction. That's a totally different argument. It's a different argument. So why don't you stick with, why don't we finish the sentencing argument if we could. Stick with the assumption that there was sufficient evidence to prove the money laundering by reinvesting the drug proceeds. Sure. So the question is why isn't that sufficient then to say that the flight was an obstruction of the money laundering too because the money laundering was intertwined with the drug trafficking. The obstruction of justice enhancement is particular to the event that took place which was fleeing from the police. And during that particular event, the only crime that Mr. Robertson was actively engaged in at the time was, were active steps towards the distribution of PCP. From the phone calls, from the surveillance at Sorrell's house and then later from his flight, it was the testimony and the belief that he was in possession of three units, three eight ounce units of PCP. But there's no evidence there that he was doing anything that was actively engaged in the laundering of money. So there was no evidence that he had money on him. There was no evidence that he was going back to purchase more PCP with it, that he intended to do anything with any proceeds. The money laundering crime only occurs once the PCP is sold and he has the proceeds in hand and then he goes back and reinvests it in agreement with Walter Sorrells. And so because there was no active steps in the commission of the crime of money laundering, at the time that he fled from the police, it was inappropriate to apply the obstruction of justice enhancement under chapter three. And it, and that's why when we look at the facts of this case broadly, the linear transactions over time from mid to late July 2011 until August 9, 2011 is that he is dealing in PCP with Walter Sorrells. And the inference that supported the conviction for money laundering was that he was reinvesting it. But on that particular day on August 9, he was not actively engaged in the money laundering other than the fact that he had acquired PCP. And in fact, it could at least be argued at that point that the conspiracy to launder money had ended prior to that point because I think that that was pretty well the end of the investigation. I think that there was a takedown soon after that and there was no evidence that Mr. Robertson engaged again in any PCP transactions with Mr. Sorrells. And so at that point on August 9, I think that there's a strong argument that the conspiracy to launder money had ended by that point. There's no evidence that he engaged in anything else with Mr. Sorrells after that. So because the only facts of that particular instance were the facts of the PCP possession with intent to distribute, which was part of the conspiracy, it was inappropriate for the district court to apply that enhancement. And I see that I've reached my two-minute mark for rebuttal. Very well. You may reserve the remainder of your time and we'll hear from Mr. Rhodes. Thank you, Judge. Judge Benton, Judge Carlton, Judge Kelly, I was going to – well, I'll just get to the point. With respect to the issue raised by the defense today on the application of the obstruction of justice to the money laundering conviction, first of all is I take a bit of the umbrage to the fact that the argument is now being put forward that there was not sufficient evidence for the conviction of the money laundering conspiracy. There was, in fact – That was certainly briefed. It is briefed, Judge. By the pro se brief. It is pro se briefed and candidly something that I probably should have paid more attention to since it's now being raised in this appeal. What was your thought on not responding to that? Did you think because it's pro se you didn't have to respond? Exactly, Judge. It was clearly a mistake on my behalf. Well, I don't know whether it was or not. We have plenty of cases that say when someone's represented by counsel it's our policy not to consider pro se briefs. So I thought maybe you were relying on those cases. I was relying on the fact, Judge, that in the district where I practice, which is, of course, the Western Dixie, Missouri, there is a local rule, which I suppose is a local rule in lots of places, exactly what you just said. When pro se motions are filed or when there is a representation, we are not required to respond unless the court specifically directs us to. I'm by no means saying it's the court's fault for me not doing it. I'm just saying that was – Okay. I was just curious what your thinking was. But go ahead and address the money laundering. Why do you say that the two levels were proper? Judge, as we argued and as I think is appropriate, is the inexplicably intertwined argument, and essentially it's this, Judge, is that there was testimony, witness testimony specifically from Mr. Frazier and I believe from others, but I know from Mr. Frazier that the practice was that people ordered the drugs. They then came and picked up the drugs. They then sold the drugs and brought back the money. In other words, one of you asked, and I apologize I didn't know which one it was, about whether these drugs were fronted or not. There absolutely was testimony, direct testimony by Mr. Frazier, who was involved in selling from the Wabash residence where these drugs on this occasion came from, that the standard practice was that people came, got drugs fronted to them, went out and sold their drugs, came back and paid for what they'd been fronted and then got more drugs. He was talking about the standard practice in this conspiracy. That's the standard practice in this conspiracy. That's what Mr. Frazier testified to. I hesitate to say if there was anybody else that said that because I distinctly remember Mr. Frazier saying it, and I know that's cited in our brief from the trial transcript. So how would you articulate what the defendant, Robertson, was doing on the day when he engaged in the reckless endangerment by flight that was in furtherance of money laundering? Judge, and as one of you said, or I think Mr. Johnson said, was that he was fleeing from police. That's true, but it's not the fact he was fleeing that got him the obstruction enhancement. What got him the obstruction enhancement was the fact that the act of fleeing with evidence that would have been used in the drug conspiracy was the obstruction. Now, how it relates to the money laundering is the fact that because of the fact that he was obstructing the money laundering or the drug conspiracy investigation by fleeing with the drugs, then hiding the drugs and preventing the recovery of the drugs, is that that reflects to the money laundering conspiracy because it was the practice of the conspiracy to sell those drugs and then come back later and use those proceeds from those sales. There was additionally in the car recovered was a package of more cigarettes, which in this conspiracy it was also testified the fact that the standard practice was you took the more cigarettes, you dipped it in the PCP that you bought, and you sold sticks. In fact, there was a long effort by the defense at trial to say that that's what Mr. Robertson was doing, was he was only buying sticks and not buying large amounts to sell for distribution. Additionally, Judge, the other way that it is related to money laundering is the fact that Robertson, after fleeing from the police and fleeing from the police with the evidence, the PCP evidence, is he then contacted Sorrells on a wire call and said, hey, I lost one and buried two. If he had already paid for those, there's no reason to inform Sorrells that he'd lost one and buried two. There's no reason to even talk to Sorrells about it. In fact, there's an impetus not to talk to Sorrells because you're telling your source that I just got stopped by the police and the drug source is more likely than not going to say, yep, not dealing with you anymore. But because he owed the drug source money for those drugs, that would be the reasonable interpretation of the reason for that call. Judge, money laundering and drug distribution are going to be inseparable for purposes of the two-level enhancement for instruction and justice. In this particular case- Yeah, but in most cases. Judge, I believe in most cases- This is a standard practice, right? I think in most cases, if you have the kind of evidence that I have in my kind of historical drug conspiracies, where they are doing this kind of activity, and as the court probably knows, the Department of Justice has indicated that to charge money laundering, you have to be able to establish that there's a course of conduct. You cannot for fronted drugs. I shouldn't say cannot. You have to get U.S. attorney approval to file money laundering charges for fronted drugs unless you can show there's more than just a fronting of the drugs. It's a legislative history, it's a sense of Congress. We actually have to keep track of all this. And so the way that it's approved is because of the fact that we show there's a practice of continued operations, not a one-off. It's continually doing the same thing. And so it's not just a one-time front. I realize the other side didn't argue the first issue, and I realize it's clear error preponderance standard. But my goodness, your witness says, how many did he get that day? One. How many did he get? One. He asked for one. That's what it says in the calls. I know he later says multiple items as part of a very compound question. I understand, Judge. On their first issue, did you prove one kilogram? Judge, my belief is the way we proved one kilogram was, first of all, is I was the trial lawyer, and I did, in fact, go back on redirect and elicit that testimony. As the court said, it's not unusual for me to ask poor questions, and so I don't dispute the fact that was a poor question. However, I did elicit the testimony to establish there were multiple items. But that matches the other evidence that was introduced about that event, which was wire calls where he specifically talked about getting two, maybe more because of his partner, but clearly getting two, and then Sorrell's talking to Douglas to go provide Fix, which was the nickname for the defendant, to provide him two green tops, or Jolly Green Ranchers, or whatever it was. The point being is that the testimony of the detective in redirect matches the other evidence in the case. If I can, Judge, I think we're going. And what I was going to say was that when you take those two, then you add the other three from the August event. And then, as our brief points out, and as I pointed out at sentencing, is when you add in the other three or four occasions where we do not admittedly have specific amounts, but it is clear that based on what Frazier was saying about how the common practice was and based on the two that we know specifically how they happened and how the other phone calls were similar to that, it was clear they were doing other drug transactions. That gets you your other 10 grams. It gets you over 1,000. You agree it's not enough for reasonable doubt, right? Because the jury found that. I agree the jury found that. Yes, I do. I do not dispute that, Judge. In fact, Judge Case said at sentencing that very point. Right. And I think actually defense conceded that in their sentencing was that they recognized it was also a different issue. I have a minute and a half left. Well, let me ask you one thing then if you have a minute and a half left. I'm just curious now, since you brought up this department policy on charging money laundering, are you saying that this is the sort of case where you would need U.S. attorney approval because it's based on the fronting alone? No, because this was not a single time of fronting. It was over a course of conduct. What was the policy to which you referred? The policy, Judge, and I'm going to get myself in trouble trying to quote the policy, but essentially as I understand the policy is, the Department of Justice, based on a congressional hearings and a request from Congress to keep track of things, said, the Department of Justice says to us that, look, if you have fronted drug transactions and the proceeds from the specified unlawful activity are the basis of fronted drugs, then we do not want you routinely filing money laundering on that event. And if you're going to do that, you need to seek approval of the U.S. attorney. Well, I thought that's what the case was here. In this situation, Judge, we had an ongoing course of conduct. Well, you had ongoing fronting of drugs. I don't understand what the policy is. Well, when it's a one-time situation is what I interpret it as, Judge. Well, I haven't seen the policy. It's really incomplete fronting, right? That's our belief, Judge. I've never used that. I probably will use that term in the future when I'm trying to convince somebody that's where we're at. Yeah, that's an incomplete fronting. It's fronting in a way that is different than what is normally taught as fronting. Fronting is usually a one-time deal. The dealer gives two pounds of methamphetamine to the guy. The guy goes and takes it to somebody else. He doesn't pay for it. He comes back. That's the kind of activity they do not want us to charge as money laundering, even though the money changed hands. It was from specified unlawful activity. It was proceeds, and it promoted the conspiracy. But that's what they're talking about. My time's up. If there's nothing more, I'll get back to you. Is this a common money laundering charge in this scenario where you have— It's not obviously the classic money laundering where the money is going through the car wash or whatever and coming out laundered. What's the purpose of—I mean, I know this is now into prosecutorial discretion and policy, so you may not want to address it. But I'm just curious when— The purpose, Judge, is that, as you know, is that the government attempts to put ourselves in the best position possible when we're prosecuting cases. And the best position possible is to charge all the readily provable offenses that we can do so under the facts. I would say, Judge, that this is a standard type of case that I handle because of historical conspiracies that are long running where there's not a lot of drugs seized, where this is a very similar scenario that I run across regularly. All right. Thank you, Mr. Rhodes. We'll hear on rebuttal then from Mr. Johnson. Thank you. I didn't mean to go down the road, I think, intentionally on the sufficiency of the evidence, but rather just to point out that in this case, the entirety of the case, the two crimes, the laundering and the drug charge, are inseparable. The proof of one is necessary for the other. There really wasn't any financial information that was presented by witnesses during the course of the trial. What about Frazier's testimony? Is Frazier's testimony enough or not? No. I think Frazier— Why not? Because, first off, there was no testimony that Frazier dealt with Mr. Robertson. That was Sorrell's, and I believe it was his wife, his significant other. And so Frazier described a sort of a general pattern, but that doesn't necessarily mean that any one individual always operated in that way. And it's certainly not uncommon on these types of cases in dealing with that amount of cash for these transactions to happen on consignment. And so Frazier didn't offer any testimony as to what Robertson's practice was. I also don't think it necessarily closes the issue, the fact that Mr. Robertson called Sorrell's after the August 9th car chase to say, hey, I don't have the stuff. I think it would be entirely proper for somebody engaged in this kind of business to let their supplier know that they'd just gotten a car chase and dump their stuff. I mean, that's a fairly threatening thing for anybody engaged in an illicit business, that they came pretty close to apprehension with close to 600 grams of PCP. Regarding that, additionally, let's understand what Mr. Robertson was doing. He did not want to get caught with PCP. He was not fleeing from the police to avoid discovery of a conspiracy to commit money laundering. Last point, my last 16 seconds going to the first issue, and it is the first transaction in July. There is not a clear record from which the court could have deduced that there was a probability of preponderance of the evidence that Mr. Robertson received two eight ounce portions rather than dips or two ounce portions. And I see that I'm out of time. Thank you. Thank you, Mr. Johnson. The case is submitted and the court will file an opinion in due course. Thank you.